BRUCE A. BOULEY ET AL. *v.* CITY OF NORWICH ET AL.
(14356)

PETERS, C. J., GLASS, BORDEN, BERDON and F. X. HENNESSY, Js.

Argued March 26—decision released June 18, 1992

*Andrew J. O'Keefe,* with whom were *Michael J. Walsh* and *Marc S. Mandell,* for the appellants (defendants).

*Donald R. Beebe,* with whom was *David J. O'Dea,* for the appellees (plaintiffs).

PETERS, C. J. The principal issue in this appeal is whether an employee who is injured in an automobile accident while operating his employer's vehicle during the course of his employment is precluded by General Statutes § 31-284 (a)[1] from collecting uninsured motor-

---

[1] General Statutes § 31-284 provides in pertinent part: "(a) An employer shall not be liable to any action for damages on account of personal injury

ist benefits[2] from his self-insured employer. The plaintiff, Bruce A. Bouley,[3] was injured when the police vehicle he was operating collided with another vehicle. After exhausting the third party tortfeasor's automobile liability coverage, the plaintiff, who had also received workers' compensation benefits, brought an action for uninsured motorist benefits against his self-insured employer, the police department of the city of Norwich and the city of Norwich (city). The trial court granted the city's motion for summary judgment. The Appellate Court reversed the trial court's decision. *Bouley* v. *Norwich*, 25 Conn. App. 492, 595 A.2d 884 (1991). We granted certification to appeal[4] and now reverse the judgment of the Appellate Court.

The record discloses the following undisputed facts. The plaintiff was a police officer employed by the city

sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits." Although this statute was amended, effective July 1, 1991, by Public Acts 1991, No. 91-32, §§ 7, 41, the changes are not pertinent to this appeal.

[2] In this opinion, the term uninsured motorist benefits encompasses underinsured motorist benefits as well.

[3] The named plaintiff's wife is also a plaintiff in this case. In this decision, "plaintiff" refers to the named plaintiff.

[4] Certification was granted limited to the following question: "Is an employee who is injured in the course of his employment and who has received workers' compensation benefits barred from receiving uninsured or underinsured motorist benefits from his self-insured employer pursuant to General Statutes § 31-284 (a)?" *Bouley* v. *Norwich*, 220 Conn. 915, 597 A.2d 332 (1991).

of Norwich. On August 31, 1985, while operating a municipal police vehicle during the course of his employment, he sustained injuries in a collision with a third party tortfeasor. The plaintiff received $18,000 in workers' compensation benefits from the city. He also made a claim for damages against the tortfeasor and recovered, by way of settlement, the sum of $20,000, which represented the full amount of the tortfeasor's automobile liability insurance. The city was entitled to reimbursement for the workers' compensation benefits paid to the plaintiff. See General Statutes (Rev. to 1985) § 31-293.[5] Because the plaintiff's economic and medical damages allegedly exceeded $20,000, he sought uninsured motorist benefits under the insurance policy covering the police vehicle the plaintiff had been operating at the time of the accident.[6] The city denied the

---

[5] General Statutes (Rev. to 1985) § 31-293 provides in pertinent part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. . . . If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. . . . If the damages, after deducting the employee's expenses as provided above, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. . . ."

[6] Pursuant to General Statutes (Rev. to 1985) §§ 38-327 (now § 38a-371), 38-326 (now § 38a-370) and 38-175c (now § 38a-336), the city, as a self-insurer, was required to provide uninsured motorist coverage on its automobiles.

plaintiff's claim for uninsured motorist benefits. The plaintiff then commenced this action for damages

General Statutes (Rev. to 1985) § 38-327 provided in pertinent part: "(c) Subject to approval of the insurance commissioner the security required by this chapter may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person *to pay basic reparations benefits and the liabilities covered by residual liability insurance* and to perform all other obligations imposed by this chapter; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this chapter; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of basic reparations benefits and the liabilities covered by residual liability insurance and all other obligations imposed by this chapter substantially equivalent to those afforded by a policy of insurance that would comply with this chapter. A person who provides security under this subsection is a self-insurer. A municipality may provide the security required under this chapter by filing with the commissioner a notice that it is a self-insurer." (Emphasis added.)

General Statutes (Rev. to 1985) § 38-326 provided in pertinent part: "(b) *Residual liability insurance* shall afford coverage which satisfies the requirements of sections 38-175a to 38-175h, inclusive." (Emphasis added.)

General Statutes (Rev. to 1985) § 38-175c provided: "(a) (1) Every [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations [as the insurance commissioner adopts], with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbi-

against the city alleging that its failure to provide uninsured motorist benefits violated General Statutes (Rev. to 1985) § 38-175c (a) (2). See footnote 6, supra.

The city moved for summary judgment on the basis that the plaintiff had received workers' compensation benefits, and that, pursuant to § 31-284 (a), those benefits represented the plaintiff's exclusive remedy as to the city. The trial court granted the city's motion for summary judgment in reliance on the Appellate Court's decision in *Ross* v. *New Haven,* 19 Conn. App. 169, 561 A.2d 456, cert. granted, 212 Conn. 814, 565 A.2d 536 (1989),[7] which had held that a police officer injured in the course of employment was barred from seeking uninsured motorist benefits from his self-insured employer.

tration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."

[7] After this court granted certification to hear the plaintiff's appeal in *Ross,* the appeal was withdrawn.

The Appellate Court reversed the decision of the trial court upon concluding that, notwithstanding § 31-284 (a) of the Workers' Compensation Act, the city was required to provide uninsured motorist benefits, as well as workers' compensation benefits, to the plaintiff for injuries incurred during the course of the plaintiff's employment. *Bouley* v. *Norwich,* supra, 502. The court indicated that the purpose of the Workers' Compensation Act, to provide the exclusive tort remedy for an employee against an employer, was not compromised by a claim to pay statutorily mandated uninsured motorist benefits. Id. The court further reasoned that in *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), a case with almost identical facts, this court had concluded that it was permissible for an employee to receive uninsured motorist benefits in addition to workers' compensation benefits. Although the employer in *Wilson* was not self-insured, the Appellate Court stated that "an injured employee of a self-insured employer is entitled to receive the same benefits as an employee of an employer that is not self-insured," and reversed the judgment of the trial court granting the city's motion for summary judgment. *Bouley* v. *Norwich,* supra, 502. In doing so, the Appellate Court stated that its decision in *Ross* v. *New Haven,* supra, which was relied upon by the trial court, had been "effectively overruled by *Wilson." Bouley* v. *Norwich,* supra, 495. This appeal followed.

The city argues that the exclusivity provision of § 31-284 (a) was triggered in this case by the undisputed fact that the plaintiff was entitled to and did receive workers' compensation benefits for injuries sustained during the course of his employment. The exclusivity provision, according to the city, bars the plaintiff, in the circumstances of this case, from uninsured motor-

ist coverage even though the city is required by statute to maintain such coverage.

The plaintiff makes a two part argument in support of his contention, to the contrary, that uninsured motorist claims against his self-insured employer do not fall within the prohibition of § 31-284 (a). First, the plaintiff claims that § 31-284 (a) is inapplicable because he is suing the city, not in negligence, but pursuant to a statutorily created right to recover uninsured motorist benefits and pursuant to the city's contractual obligation to provide uninsured motorist coverage. Second, the plaintiff contends that he is suing the city in its capacity as an insurer, not as an employer, and thus the action is not barred by § 31-284 (a).

We agree with the city. We therefore reverse the judgment of the Appellate Court.

I

The Workers' Compensation Act and the statute mandating uninsured motorist coverage appear in separate chapters of the General Statutes. The first Workers' Compensation Act was enacted in this state in 1913; Public Acts 1913, c. 138, pt. A, § 2; see also *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 539–40, 494 A.2d 555 (1985); A. Grillo, "Fifty Years of Workmen's Compensation—An Historical Review," 38 Conn. B.J. 239, 246 (1964); while § 38-175c requiring uninsured motorist coverage on all automobile liability insurance policies, was enacted fifty-four years later in 1967. Public Acts 1967, c. 510, § 4. Neither statutory scheme expressly refers to the other.

"The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425

A.2d 1263 (1979); see also *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, supra, 541; *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 669, 425 A.2d 131 (1979). Under the Workers' Compensation Act, both the employer and the employee have relinquished certain rights to obtain other advantages. The employee no longer has to prove negligence on the part of the employer, but, in return, he has to accept a limited, although certain, recovery. See *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985). The employer, in turn, guarantees compensation to an injured employee in return for the exclusivity of the workers' compensation liability to its employees.[8] See *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 455, 594 A.2d 446 (1991); *Jett* v. *Dunlap*, supra; *Velardi* v. *Ryder Truck Rental, Inc.*, 178 Conn. 371, 376, 423 A.2d 77 (1979); see generally J. King, "The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer," 55 Tenn. L. Rev. 405, 406–408 (1988); A. Larson, "The Nature and Origins of Workmen's Compensation," 37 Cornell L.Q. 206 (1952).

Section 31-284 (a), known as the exclusivity provision of the Workers' Compensation Act, provides that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . . All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter . . . ." This provision does not, however, preclude an injured employee from bringing a

[8] The legislature has expressly provided, however, that an employer is not responsible to pay workers' compensation benefits to an employee for personal injuries caused by the "wilful and serious misconduct of the injured employee or by his intoxication." General Statutes § 31-284 (a).

claim against a third party tortfeasor responsible for such injury. Rather, the legislature has specifically allowed for such a cause of action. See footnote 5, supra.

The plaintiff does not dispute that he was injured during the course of his employment and that he has received workers' compensation benefits. He claims that he is nonetheless entitled to uninsured motorist benefits from the city because the exclusivity of the Workers' Compensation Act is inapplicable to a claim for uninsured motorist benefits that derives from statutorily mandated uninsured motorist coverage and a contractual obligation to provide such coverage undertaken by the city when it became self-insured.

A

The Appellate Court originally concluded that a claim for uninsured motorist benefits was within the purview of the Workers' Compensation Act in *Ross* v. *New Haven,* supra, 171. It emphasized that § 31-284 (a) "has been repeatedly and uniformly construed by the courts of this state to exclude further recovery from the employer by an employee who has received workers' compensation benefits," and held that an employee, injured in the course of his employment, was barred from receiving uninsured motorist benefits from his employer. Id. The Appellate Court subsequently determined, however, in *Bouley* v. *Norwich,* 25 Conn. App. 492, 495, 595 A.2d 884 (1991), and *CNA Ins. Co.* v. *Colman,* 25 Conn. App. 651, 653, 595 A.2d 949 (1991), that *Ross* was no longer controlling following this court's decision in *Wilson* v. *Security Ins. Co.,* supra. We do not agree.

The issue presented in *Wilson* was not whether a claim for uninsured motorist benefits brought against an employer for injuries sustained in the course of employment was precluded by the Workers' Compen-

sation Act. Rather, the principal issue in that case was "whether coverage for uninsured motorists contained in a fleet automobile liability policy may be combined or 'stacked' in determining the total amount of coverage available to a single claimant." Id., 533. The only issue in *Wilson* that concerned workers' compensation was whether the insurance commissioner was empowered to offset workers' compensation payments against uninsured motorist limits. Id., 536–39. The plaintiff had raised the issue on cross appeal claiming that the trial court had erred in offsetting his workers' compensation award against his uninsured motorist award. We held that "[i]f damages are paid pursuant to the workers' compensation law, the uninsured motorist coverage may be reduced accordingly." Id., 538. The exclusivity provision of the Workers' Compensation Act was neither raised nor addressed in *Wilson*. Consequently, the issue of whether a claim for uninsured motorist benefits is prohibited by § 31-284 (a) is one of first impression for this court.

### B

The plaintiff advances the argument that the language of the statute and the cases that have interpreted the exclusive remedy provision limit its application to common law claims against an employer. Because his claim is statutory and contractual in nature, he contends that it is not barred by the exclusivity of the Workers' Compensation Act.

Contrary to the plaintiff's representations, neither the language of the statute nor the weight of judicial authority supports such a limited interpretation of § 31-284 (a). The statute does not distinguish between common law tort claims, statutory claims and contract claims. It states that "[a]*ll* rights and claims between employer and employees . . . arising out of personal injury . . . sustained in the course of employment

. . . are abolished . . . ." (Emphasis added.) In clear and unambiguous terms, the statute provides that liability under the Workers' Compensation Act is an employer's exclusive liability to an employee for a personal injury that occurs during the course of his employment.

This court has repeatedly stated that workers' compensation is an employee's only remedy for injuries that arise during the course of his employment. See *Pokorny* v. *Getta's Garage,* supra, 455; *Nolan* v. *Borkowski,* 206 Conn. 495, 500, 538 A.2d 1031 (1988); *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* supra, 541–42; *Velardi* v. *Ryder Truck Rental, Inc.,* supra, 376. The exclusivity provision "operate[s] as a total bar to actions brought by employees against their employers for job related injuries." *Sgueglia* v. *Milne Construction Co.,* 212 Conn. 427, 433, 562 A.2d 505 (1989); see also *Sharp* v. *Mitchell,* 209 Conn. 59, 66, 546 A.2d 846 (1988); *Panaro* v. *Electrolux Corporation,* 208 Conn. 589, 599, 545 A.2d 1086 (1988).[9] While we have stated that the exclusivity provision bars "tort action[s] for work related injuries"; see *Mingachos* v. *CBS, Inc.,* supra,

---

[9] General Statutes § 31-284 (a) does provide that "nothing herein shall prohibit any employee from securing, *by agreement with his employer,* additional benefits from his employer for such injury or from enforcing such agreement for additional benefits." (Emphasis added.) See also *Pokorny* v. *Getta's Garage,* 219 Conn. 439, 460–61, 594 A.2d 446 (1991). There is absolutely no evidence in the record of any contractual undertaking between the city and Bouley with respect to uninsured motorist benefits. As the Appellate Court noted in *Bouley* v. *Norwich,* 25 Conn. App. 492, 496, 595 A.2d 884 (1991), every automobile liability insurance policy must provide uninsured motorist coverage and as such, coverage would exist regardless of bargaining between employer and employee. We will not presume that, through the adoption of legislation mandating uninsured motorist coverage, a contract for "additional benefits" was imposed upon all employers and their employees as a matter of law. Section 31-284 (a) would not, however, appear to preclude an employer and employee from entering into an express contract whereby the employer agrees to provide uninsured motorist coverage for the benefit of the employee in addition to workers' compensation coverage.

97; *Jett* v. *Dunlap,* supra, 217; the clear language of the statute is not so limited in its application. Moreover, we have previously concluded that § 31-284 (a) barred a statutory action against an employer. In *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* supra, 535, we held that the exclusivity of the Workers' Compensation Act precluded an employee, allegedly injured during the course of his employment, from bringing a direct action against his employer for breach of the *statutory* duty to "provide his employees with a safe place to work." See also *Mingachos* v. *CBS, Inc.,* supra, 100–108.

One commentator has noted that "[t]he exclusiveness rule relieves the employer not only of common-law tort liability, but also of statutory liability under all state and federal statutes, as well as of liability in contract and in admiralty, for an injury covered by the compensation act." 2A A. Larson, Workmen's Compensation Law (1992) § 65.30, p. 12-21. In addition, courts from other jurisdictions have ruled that their workers' compensation statutes bar actions brought pursuant to various state and federal statutes. See, e.g., *Ferreira* v. *Panama Canal Co.,* 215 F. Sup. 726 (D.D.C. 1963) (the Federal Employers' Liability Act); *Veterans of Foreign Wars Post 7320* v. *Sheffield,* 398 So. 2d 262 (Ala. 1981) (state Employer's Liability Act); *Gordon* v. *Burgess Construction Co.,* 425 P.2d 602 (Alaska 1967) (Defective Machinery Act); *McCarty* v. *Marshall,* 51 Ill. App. 3d 842, 366 N.E.2d 1052 (1977) (Structural Work Act); *Turner* v. *Southeastern Pennsylvania Transportation Authority,* 256 Pa. Super. 43, 389 A.2d 591 (1978) (No-Fault Automobile Insurance Act). The statutory or contractual basis for uninsured motorist coverage does not, therefore, abrogate the exclusivity of the Workers', Compensation Act for personal injuries that arise during the course of employment.

The plaintiff asserts, however, that the policy underlying mandatory uninsured motorist coverage, to place the injured party in the same position as if he had been injured by an insured motorist; *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982); obligates the city to pay him uninsured motorist benefits for his injuries. The policy would be compromised, he asserts, by denying benefits to employees injured in the course of their employment.

While uninsured motorist coverage has been mandated by statute, we have recognized that such coverage is less an independent source of recovery than it is a "safety net." Section 38-175c "does not require that uninsured motorist coverage be made available when the insured has been otherwise protected, such as when the uninsured motorist is only one of two or more joint tortfeasors, or when the uninsured motorist has other resources available to protect the insured. Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 472, 370 A.2d 1011 (1976); see also *Wilson* v. *Security Ins. Co.,* supra, 538. When an employee is eligible for and has received workers' compensation benefits, the policies underlying uninsured motorist coverage are not sufficiently compelling to override the exclusivity of the Workers' Compensation Act. While a self-insured employer must maintain uninsured motorist coverage, such insurance does not compel the provision of coverage to an employee covered by workers' compensation.

We are also unpersuaded by the plaintiff's claims that, in mandating uninsured motorist coverage, the legislature had either created an exception to the exclusivity of the Workers' Compensation Act or had impliedly repealed the exclusivity of the act as it per-

tains to claims for uninsured motorist benefits. The express language of § 31-284 (a) relieves an employer of all liability for personal injuries beyond the Workers' Compensation Act and there is no language within § 38-175c indicating a legislative intent to create an exception to the exclusivity of the act.[10] Where the legislature has intended an exception to § 31-284 (a), it has expressly so provided. See, e.g., General Statutes § 31-293a (exempting from the Workers' Compensation Act an action against a fellow employee for his wilful or malicious acts or his negligent operation of a motor vehicle). Moreover, § 31-284 (a) exempts from its coverage only rights and claims "given by this chapter." The statutory provisions concerning workers' compensation appear in chapter 568 of the General Statutes, while statutory provisions concerning uninsured motorist coverage appear in chapter 700 of the General Statutes. Construing the mandatory uninsured motorist coverage as an "exception" to the Workers' Compensation Act is irreconcilable with the express language of § 31-284 (a).

"The rule disfavoring implied repeals is a 'well established principle of statutory construction.' *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521, 468 A.2d 574 (1983). The legislature is presumed to have acted with the intent to create a consistent body of law. *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984). If two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977). '[E]nactments by the General Assembly are presumed to repeal earlier inconsistent ones to the extent that they are in con-

---

[10] There are no references to the Workers' Compensation Act in the legislative history of General Statutes (Rev. to 1985) § 38-175c (now § 38a-336). See 12 S. Proc., Pt. 4, 1967 Sess., pp. 1956–58; 12 H.R. Proc., Pt. 8, 1967 Sess., pp. 3295–97.

flict.' *Southern Connecticut Gas Co.* v. *Housing Author-
ity*, supra. Because repeal by implication is generally
disfavored, however, the principle applies only when
the relevant statutes 'cannot stand together.' Id.;
*Hirschfeld* v. *Commission on Claims*, supra, 606–607."
*Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn.
631, 641, 587 A.2d 415 (1991).

Only one interpretation of §§ 31-284 (a) and 38-175c
enables the statutes to "stand together." Our conclu-
sion that an employee is limited to the recovery of work-
ers' compensation benefits from his employer for
injuries that occur during the course of his employment
does not render the two statutes inconsistent. The
Workers' Compensation Act remains an employee's
exclusive remedy against an employer for workplace
injuries, while uninsured motorist coverage remains
mandatory on all automobile liability insurance poli-
cies.[11] Because workers' compensation is a bar to unin-
sured motorist recovery only when the employee has
already been made whole by workers' compensation,
the "safety net" function of uninsured motorist insur-
ance coverage remains unimpaired. The opposite con-
clusion, however, that the legislature, in enacting a
statutory scheme mandating uninsured motorist cover-

---

[11] The plaintiff asserts that it would be absurd to require the city to pro-
vide uninsured motorist coverage, and yet to exclude its employees from
benefitting from this coverage. While an employee cannot recover unin-
sured motorist benefits from his employer for work-related injuries, others
might be eligible for such benefits, i.e., a passenger in the automobile who
is not an employee. Consequently, requiring an employer to maintain unin-
sured motorist coverage on its automobiles is not absurd. Whether an
employer's uninsured motorist policy may make an outright exclusion in
coverage for an employee occupying an automobile during the course of
employment is an issue to be addressed by the legislature and the insur-
ance commissioner, not the courts. See *Wilson* v. *Security Ins. Co.*, 213
Conn. 532, 539, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112
L. Ed. 2d 28 (1990); see also Regs., Conn. State Agencies § 38-175a-6 (c)
(listing exclusions from an insurer's obligation to pay uninsured motorist
benefits).

age on all automobile liability insurance policies, had intended that an employee injured during the course of his employment could collect uninsured motorist benefits from his employer, would render the two statutes inconsistent. We will therefore not presume that the subsequent enactment of a statute mandating uninsured motorist coverage impliedly repealed the exclusivity of the Workers' Compensation Act.

Because the legislature in § 31-284 (a) has unambiguously provided that the Workers' Compensation Act is to be an employee's exclusive remedy for "[a]ll rights and claims between employer and employees" arising out of work-related personal injuries, it is for the legislature, and not the courts, to carve out an exception to the act for uninsured motorist benefits.[12] See *Mingachos* v. *CBS, Inc.,* supra, 106. "We recognize that over the years the legislature has worked out a complex statutory scheme in promulgating workers' compensation statutes and that '[a]n integral part of this complex structure is the accepted proposition that an employee surrenders other claims for the certainty of the exclusive workers' compensation remedy.' *Boyle* v. *Breme,* [187 N.J. Super. 129, 132, 453 A.2d 1335 (1982)]. Such a 'comprehensive, well thought out legislative scheme should not be tinkered with by the courts.' " *Panaro* v. *Electrolux Corporation,* supra, 605; see also J. King, supra, 411 ("[A]ny serious threat

---

[12] We have recognized two narrow exceptions to the exclusivity of the Workers' Compensation Act. See *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 40, 522 A.2d 1235 (1987) (exception for minor who has been illegally employed); *Jett* v. *Dunlap,* 179 Conn. 215, 218–19, 425 A.2d 1263 (1979) (exception for intentional torts committed or intentionally directed by employer); but see *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985) (declining to extend *Jett* exception to include "accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury" [internal quotation marks omitted]).

to the integrity and continued survival of the workers' compensation system must be viewed with concern. Abrogation of the exclusive remedy rule by expansion or creation of new exceptions to the rule could pose such a threat.'').

We are aware that the four jurisdictions that have considered whether an employee who has received workers' compensation benefits is precluded from receiving uninsured motorist benefits from his self-insured employer or his insurance carrier have decided that the employee is not so precluded. See *Heavens* v. *LaClede Gas Co.,* 755 S.W.2d 331 (Mo. App. 1988) (self-insured employer); *Christy* v. *Newark,* 102 N.J. 598, 510 A.2d 22 (1986) (self-insured employer); *Boris* v. *Liberty Mutual Ins. Co.,* 356 Pa. Super. 532, 515 A.2d 21 (1986) (commercial insurance company); *William* v. *Newport News,* 240 Va. 425, 397 S.E.2d 813 (1990) (self-insured employer). We are, however, unpersuaded by the reasoning of those cases. We are constrained by the express language of our Workers' Compensation Act to preclude an employee's recovery of uninsured motorist benefits from an employer for his work-related injuries.[13]

---

[13] The plaintiff also argues that § 38-175a-6 (d) of the Regulations of Connecticut State Agencies authorizes a claimant to recover both uninsured motorist benefits and workers' compensation benefits. Section 38-175a-6 (d) (2) provides in relevant part that a policy for uninsured motorist coverage "may provide for the reduction of limits to the extent that damages have been . . . paid or are payable under any workers' compensation . . . law." The plaintiff emphasizes that we accepted the validity of the regulation in *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 569 A.2d 40 (1990), and that the regulation "necessitates a finding that a claim for workers' compensation benefits and a claim for [uninsured motorist] benefits can co-exist and that the former does not bar the latter." To the contrary, this regulation does not lead to such a conclusion. Section 38-175a-6 (d) does no more than authorize a setoff whereby an insurer may deduct from the limits of its uninsured motorist policy any amounts that have been paid pursuant to a workers' compensation policy. For example, an employee who has received workers' compensation benefits would not be precluded by General Statutes (Rev. to 1985) § 31-284 (a) from making a claim for uninsured motor-

## II

We now turn to the plaintiff's second claim that, in providing uninsured motorist coverage as a self-insured municipality, the city shed the protection of the Workers' Compensation Act. Essentially, the plaintiff asserts that he was suing the city, not as an "employer," but as an "insurer." As § 31-284 (a) is applicable only to actions against an employer, the plaintiff argues that the present action for uninsured motorist benefits against the city in its capacity as insurer was not barred.

This effort to invoke the "dual capacity" doctrine for self-insured employers is unavailing. We have previously considered and expressly rejected the dual capacity doctrine in the context of a claim that a company-employed nurse was acting as an independent contractor in treating a plaintiff employee. *Panaro* v. *Electrolux Corporation,* supra, 600, 606. In doing so, we recognized that the weight of authority in nearly all jurisdictions had rejected similar dual capacity arguments. Id., 596–97.

While *Panaro* did not address the aspect of the dual capacity doctrine asserted by the plaintiff in the present appeal, the dual capacity doctrine in general has been found unpersuasive by commentators and courts alike. See, e.g., 2A A. Larson, supra, § 72.81 (a), p. 14-229 (the dual capacity doctrine "could go a long way toward demolishing the exclusive remedy principle" when "one considers how many such added relations an employer might have in the course of a day's work"); J. King, supra, 492–96 ("It is easy to see how the dual capacity genie, once allowed out of its bottle, could quickly

---

ist benefits under his own personal automobile insurance policy. Pursuant to the regulation, the employee's personal automobile insurance carrier would be entitled to deduct from any insurance payment the amount of workers' compensation benefits received by the plaintiff.

devour the exclusive remedy rule completely." Id., 496.).
In rejecting the dual capacity doctrine, the Tennessee
Supreme Court succinctly stated that "[t]he employer
is the employer; not some person other than the
employer. It is that simple." *McAlister* v. *Methodist
Hospital of Memphis,* 550 S.W.2d 240, 246 (Tenn. 1977).

Courts and commentators have also specifically criti-
cized the application of the dual capacity doctrine to
self-insured employers. Professor Larson refers to
attempts to assert a dual capacity on the basis of an
employer's status as a self-insured entity as "rather
far-out" and notes that even California, which at one
time had accepted the dual capacity doctrine, has sub-
sequently rebuffed such attempts. 2A A. Larson, supra,
§ 72.89, p. 14-287; see *Denman* v. *Duval Sierrita Cor-
poration,* 27 Ariz. App. 684, 685, 558 P.2d 712 (1976)
(theory that self-insured employer acted in a dual capac-
ity "is without support in the case law or logic");
*Williams* v. *International Paper Co.,* 129 Cal. App. 3d
810, 815–16, 181 Cal. Rptr. 342 (1982) ("By becoming
self-insured, the employer simply does not create an
' "extra" employer status or a relationship that is dis-
tinct from that of employer and employee' "; self-
insurance did not transform the employer "into two
legal entities where there was but one before."); *Swain*
v. *J.L. Hudson Co.,* 60 Mich. App. 361, 230 N.W.2d 433
(1975) (court dismissed suit brought against employer
in capacity as self-insurer as barred by exclusivity pro-
vision of workers' compensation act).

We will not circumvent the clear language of
§ 31-284 (a) by invoking the fiction of the dual capac-
ity doctrine for self-insured employers. The city was
not transformed into something other than an employer
for purposes of the Workers' Compensation Act
because it chose to become self-insured. Due to the cost
of liability insurance premiums, it is conceivable that
many employers, including municipalities like the city

of Norwich, might choose to provide their own automobile liability insurance coverage pursuant to General Statutes § 38a-371 (c). Excluding such employers from the protection of the Workers' Compensation Act with regard to uninsured motorist benefits would impinge upon their statutory right to be self-insured and upon the exclusivity of the Workers' Compensation Act.

Moreover, in this court's decision in the companion case of *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 610 A.2d 1257 (1992), issued today, we concluded that an employer's automobile liability insurance provider was entitled to the same immunity from suit for uninsured motorist benefits for work-related injuries as the employer. We cited the increased costs that would ultimately be borne by the employer for benefits paid by its insurer and concluded that, for purposes of § 31-284 (a) and uninsured motorist benefits, the employer's insurer was the "alter ego" of its insured. Id., 773–74. If an employer's automobile liability insurance provider is deemed an "employer" within the meaning of § 31-284 (a), it would be illogical and inconsistent to conclude that the self-insured employer is anything other than an "employer."[14]

The judgment is reversed and the case is remanded to the Appellate Court with direction to affirm the judgment of the trial court.

In this opinion GLASS, BORDEN and F.X. HENNESSY, Js., concurred.

---

[14] Because we concluded in *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 610 A.2d 1257 (1992), that an employee of a non-self-insured employer was precluded by then General Statutes § 31-284 (a) from collecting uninsured motorist benefits from his employer's insurance carrier, we need not address the plaintiff's claim that denying him uninsured motorist benefits in this case would deny him equal protection of the law.

BERDON, J., dissenting. I agree with the Appellate Court that the exclusivity provision of the Workers' Compensation Act; General Statutes (Rev. to 1985) § 31-284;[1] does not bar an employee injured in an automobile accident while in the course of his employment from receiving uninsured motorist benefits[2] from his self-insured employer. Any other result would simply confuse tort law with contract law—both of which, of course, are birds of a different feather.

The majority claims that the Appellate Court's decision was predicated, in part, on a misreading of *Wilson v. Security Ins. Co.*, 213 Conn. 532, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990). *Wilson* was one reason advanced by the Appellate Court; however, the crux of the Appellate Court's decision was not *Wilson*, but its analysis of the purposes and policies of workers' compensation benefits and uninsured motorist benefits.[3] Judge Landau, writing a well reasoned and analytical decision for the Appellate Court, distinguished between these two bodies of law and concluded that § 31-284 does not preclude the right to uninsured motorist coverage whether or not the employer was self-insured. *Bouley v. Norwich*, 25 Conn. App. 492, 502, 595 A.2d 884 (1991).

The Workers' Compensation Act provides an exclusive remedy for an employee for work related injuries

---

[1] See footnote 1 of the majority opinion.

[2] Here, as in the majority opinion, the term uninsured motorist benefits encompasses underinsured motorist benefits as well.

[3] "We further conclude that a self-insured entity, in its capacity as an employer, is required to provide workers' compensation benefits, and, as an insurer, is required to provide uninsured motorist benefits. An employee's receipt of workers' compensation benefits from a self-insured employer does not, therefore, preclude his right to receive uninsured motorist benefits.

"A review of the purposes and policies underlying workers' compensation benefits and uninsured motorist benefits indicates that they exist for separate and distinct reasons." *Bouley v. Norwich*, 25 Conn. App. 492, 495, 595 A.2d 884 (1991).

on the basis of *tort* law; General Statutes (Rev. to 1985) § 31-284; *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985). "In a word . . . [workers' compensation] statutes compromise an employee's right to a common law *tort* action for work related injuries in return for relatively quick and certain compensation." (Emphasis added.) Id. The Workers' Compensation Act, however, does not preclude an employee from bringing a claim against a third party tortfeasor who contributed to the injury for which he or she is receiving workers' compensation. General Statutes (Rev. to 1985) § 31-293. Indeed, § 31-293 authorizes an employee who is injured in an automobile collision during the course of employment to bring suit against the third party tortfeasor who caused the injury. Automobile insurance laws mandate that all automobile insurance policies, including policies that cover vehicles owned by employers and operated by employees, must provide uninsured motorist coverage so that the insured is able to recover for the damages he or she would have been able to recover from the uninsured tortfeasor. General Statutes § 38a-336; *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982). Although the law allows the owner of an automobile to be a self-insurer, it requires the self-insurer "to pay basic reparations benefits and the liabilities covered by residual liability insurance and to perform all other obligations imposed" upon an insurer. General Statutes (Rev. to 1985) § 38-327 (c). While an employee may operate an employer's vehicle in the course of his or her employment, that employee is an insured and enjoys a contractual right to uninsured motorist coverage as mandated by statute.

The plaintiff employee brought the present action seeking to enforce his *contractual* right to recover damages he sustained as a result of the *negligence of a third party tortfeasor*—rights created by the defendant

employer's statutory obligation to provide uninsured motorist protection. This action is simply not precluded by the Workers' Compensation Act. To hold otherwise is as farfetched as to conclude that an employee would be precluded under the Workers' Compensation Act from bringing an action against his employer over a contractual term of his employment.

Furthermore, such a holding undermines the statutory requirement that an employer provide uninsured motorist coverage. In footnote 11 of its opinion, the majority suggests that it is not absurd to require the city to provide uninsured motorist coverage, even though employees are precluded from benefitting from such coverage. The majority takes comfort in the fact that other individuals, such as a passenger in the car who is not an employee, might be eligible for benefits. The possible benefit to other individuals, however, does absolutely nothing to help the insured employee recover for the damages he or she would have been able to recover from the uninsured tortfeasor, which was the purpose of General Statutes § 38a-336. *Harvey* v. *Travelers Indemnity Co.*, supra, 249. Section 38a-336 does not distinguish between employees and nonemployees; rather, it gives all insureds—employees and nonemployees alike—a contractual and statutorily mandated right to uninsured motorist coverage. See id., 249-51.

Indeed, the majority is unable to point to any other jurisdiction to support its conclusion that the Workers' Compensation Act bars an employee's recovery of uninsured motorist benefits from an employer for work related injuries. On the contrary, other jurisdictions that have had occasion to consider the issue have held that their workers' compensation act is not a bar. The New Jersey Supreme Court in *Christy* v. *Newark,* 102 N.J. 598, 510 A.2d 22 (1986), a case strikingly similar to this, ruled that its workers' compensation act did

not preclude the employee from recovering uninsured motorist benefits from his self-insured employer. In *Christy,* the plaintiff, a police officer, was injured when a "hit-and-run" vehicle struck the police vehicle that the officer was operating in the course of his employment. See also *Heavens* v. *LaClede Gas Co.,* 755 S.W.2d 331 (Mo. App. 1988) (self-insured employer was bound to provide uninsured motorist coverage to employee injured in the course of employment); *Boris* v. *Liberty Mutual Ins. Co.,* 356 Pa. Super. 532, 515 A.2d 21 (1986) (a claim for uninsured motorist benefits addresses the wrongs of a third party, not the wrongs of the employer or coworkers, and thus takes such claims outside the scope of workers' compensation "immunity"); *William* v. *Newport News,* 240 Va. 425, 397 S.E.2d 813 (1990) (the "exclusivity provision" does not prevent an employee from exercising rights granted under the uninsured motorist provision).

Not only did the court in *Christy* hold that the New Jersey workers' compensation act does not bar an employee from recovering uninsured benefits from his self-insured employer, but it also noted that such uninsured coverage does not give the employee a windfall, but merely recoverable damages. The employer is entitled to reimbursement from the damages paid by the third party tortfeasor or pursuant to the uninsured motorist coverage. *Christy* v. *Newark,* supra, 609. Likewise, the employer in Connecticut, subject to the provision of § 31-293, would also be entitled to reimbursement. Indeed, in the present case, the defendant was reimbursed by approximately $18,000 out of the $20,000 paid to the plaintiff by the third party tortfeasor's insurer, leaving the plaintiff $2000 to cover his other damages which were not compensated for under workers' compensation.

Accordingly, I dissent.