NO. 07-03-0305-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 8, 2003

_____

CITY OF CANYON and LOIS RICE,

Appellants

v.

KEVIN FEHR and BRIAN GOSS,

Appellees

_____

FROM THE 47th DISTRICT COURT OF RANDALL COUNTY;

NO. 53,045-A; HON. DAVID GLEASON, PRESIDING

_____

*Opinion*

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

The City of Canyon and Lois Rice (collectively referred to as Canyon) appeal from an order denying a plea to the jurisdiction of the court and granting Kevin Fehr (Fehr) and Brian Goss (Goss) a temporary injunction. Four issues are presented for our consideration. The first and second concern the doctrines of sovereign immunity and standing, respectively. Through the third and fourth issues, Canyon effectively argues that

the trial court abused its discretion in granting the preliminary injunction because there does not exist a substantial likelihood that Fehr and Goss will ultimately succeed on the merits. They will not do so, according to Canyon, because re-zoning is not subject to initiative and referendum. We affirm in part and reverse in part.

## *Background*

Canyon is a home rule municipality. Article XIV of its charter contains procedures for initiative (§14.01) and referendum (§14.02).

Under provisions of the city's zoning ordinance, proposals were drafted to re-zone two tracts of land within Canyon's boundaries from single family residential use to commercial use. The local zoning commission recommended that the proposals be denied. However, on April 7, 2003, Canyon's city commissioners approved the change by adopting amendments to the local zoning ordinance ("the amendments").

Upon adoption of the amendments, Fehr and Goss (two individuals alleging themselves to be citizens, residents and qualified voters of the city of Canyon) sued Canyon for injunctive or mandamus relief. That is, they sought a decree from the trial court ordering Canyon to abide by various provisions of its local charter. The charter provisions allegedly obligated the Canyon city commissioners to address a petition tendered by Fehr and Goss to the city clerk. Those signing the petition (who included Goss, Fehr and others representing themselves to be residents and qualified voters of Canyon) demanded either the 1) adoption of a resolution negating the re-zoning ordinances, 2) repeal of the amendments, or 3) submission of the re-zoning issue to a referendum election. The

2

injunctive relief contemplated by Fehr and Goss would compel the city commission to undertake one of the three actions mentioned.

Canyon filed an answer wherein it invoked sovereign immunity and averred that neither Fehr nor Goss had standing to assert the claims mentioned in their pleading. The trial court rejected these contentions. So too did it issue a temporary injunction 1) suspending the effectiveness of the amendments and 2) directing the city clerk to present the initiative and referendum petition to the city commission. Canyon appealed the interlocutory decree.

### *Issue One — Sovereign Immunity*

Canyon initially argues that the doctrine of sovereign immunity barred the suit. We disagree and overrule the point.

As acknowledged by the Texas Supreme Court, judicial decrees have been "issued and affirmed . . . to compel municipal authorities to perform their ministerial duties with respect to initiatory elections." *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999). And, while neither *Blum* nor any other case authority cited to us by the parties explain why sovereign immunity has not barred execution of those decrees, we conclude that the answer lies in the nature of initiative and referendum and the status of those pursuing it.

It is beyond dispute that initiative and referendum entails the exercise of a power reserved to the people. *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 648-49 (1951); *quoting, Taxpayers' Assn. of Harris County v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657 (1937). It is not simply a right granted to them. *Id.* Moreover, in exercising that

3

power, the citizenry become the legislative branch of the governmental unit involved. *Blum v. Lanier*, 997 S.W.2d at 262; *Glass v. Smith*, 244 S.W.2d at 648-49. And, therein lies the answer to the dispute before us for the doctrine of sovereign immunity cannot be used by a municipality against itself.

That is, sovereign immunity exists as a means of protecting the independent sovereignty of the governmental unit. *Tex. Workers' Comp Comm'n v. City of Eagle Pass*, 14 S.W.3d 801, 803 (Tex. App.--Austin 2000, pet. denied) (holding that the doctrine did not bar suit initiated by state regulatory agencies). Serving that purpose, it operates to bar suits initiated by *private third parties*, not by entities in relation to which the governmental unit has no independent sovereignty. *Id.* And, logic compels that a governmental unit, such as a municipality, has no independent sovereignty from itself. So, because a person seeking to compel initiative and referendum acts not as a private third party but as the legislative branch of the governmental unit, *see Blum v. Lanier, supra*, *Glass v. Smith, supra*, sovereign immunity does not bar Fehr and Goss from suing a governmental unit (*i.e.* Canyon) as a means of enforcing the initiative and referendum provisions contained in its city charter.

### *Issue Two — Standing*

Next, Canyon asserts that neither Fehr nor Goss had standing to pursue the claims involved. We again disagree and overrule the issue.

As stated by the Supreme Court, individuals qualified to vote and who sign the petition for initiative and referendum "have a justiciable interest in the valid execution of the

4

charter amendment election." *Blum v. Lanier*, 997 S.W.2d at 262. Thus, their interests are distinct from those of the general public, and they have standing to prosecute their claim. *Id.* Here, Fehr and Goss alleged in their live pleading that they signed the petition tendered to the city clerk. Furthermore, this allegation is supported by the evidence admitted at the hearing upon the motion for temporary injunction. Thus, Fehr and Goss have standing to prosecute the action.

### *Issues Three and Four — Initiative and Referendum and Zoning*

In their third and fourth issues, Canyon alleges that the trial court erred in issuing the temporary injunction because the zoning changes were not subject to initiative and referendum. They rely on case law and commentary to support their contention. In response, Fehr and Goss argue that recently enacted sections of the Texas Local Government Code authorized the trial court to order compliance with Canyon's ordinances regarding popular vote. We disagree with Goss and Fehr and sustain the points of error.

As mentioned in the opening of this opinion, Canyon appeals from, among other things, the trial court's execution of a temporary injunction. To obtain the latter, the movant (Fehr and Goss) had to establish 1) a probable right of recovery, 2) imminent, irreparable harm if the request is denied, and 3) the existence of no adequate remedy at law. *EOG Resources, Inc. v. Gutierrez*, 75 S.W.3d 50, 52 (Tex. App.--San Antonio 2002, no pet.). In assessing whether they did so and the propriety of the trial court's decision, we must remember that a trial court enjoys broad discretion in granting and denying such injunctions. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978); *EOG Resources, Inc. v.*

5

*Gutierrez*, 75 S.W.3d at 52. However, it can abuse that discretion and subject its decision to reversal by misapplying the law. *EOG Resources, Inc. v. Gutierrez*, 75 S.W.3d at 52. According to Canyon, the trial court did just that by concluding that Fehr and Goss had a probable right of recovery when the cause is finally tried. We agree.

As previously said, initiative and referendum is not a right granted the citizenry. Rather, it represents a power reserved from the government and retained by the people. Because of this, provisions dealing with it should be liberally construed in favor of the reservation. *Quick v. City of Austin*, 7 S.W.3d 109, 124 (Tex. 1998); *Glass v. Smith*, 244 S.W.2d at 648-49. However, it may be limited. That can occur through either express directive or by implication. *Quick v. City of Austin*, 7 S.W.3d at 124. And, before it can arise through implication, the provisions must evince a clear and compelling intent to limit the power. *Id.*

Authority also holds that though the power may be recognized at the local level it may nonetheless be restricted by the State's general laws. *Glass v. Smith*, 244 S.W.2d at 649. Indeed, our Texas Constitution provides that neither a city charter nor an ordinance may contain any provision inconsistent with the Constitution or the general laws enacted by the state legislature. TEX. CONST. art. XI, §5; *Glass v. Smith*, 244 S.W.2d at 649. Yet, logically, that the charter provisions and ordinances are subject to the general laws of this state also means that this state's general laws may permit what a charter prohibits. Along that line, we note Texas case authority that historically prohibited the use of initiative and referendum in the arena of zoning. *E.g., San Pedro North, Ltd. v. City of San Antonio*, 562 S.W.2d 260 (Tex. Civ. App.--San Antonio 1978, writ ref'd n.r.e.); *Hancock v. Rouse*, 437

6

S.W.2d 1 (Tex. Civ. App.--Houston [1st Dist.] 1969, writ ref'd n.r.e.). However, when those opinions were issued, Texas had no statute touching upon the subject. Indeed, the *San Pedro* court so acknowledged. *San Pedro North, Ltd. v. City of San Antonio*, 562 S.W.2d at 262 (stating that the Zoning Enabling Act contained no provisions relating to initiative and referendum). That situation changed in 1993 when our legislature added §211.015 to the Texas Local Government Code.

Upon enactment of §211.015, referendum was interjected into the fray. The problem before us concerns the extent to which referendum is available as a means of repealing a municipality's attempt to re-zone an area. If we conclude that the statute enables Fehr and Goss to prosecute their petition, the Canyon City Charter must give way to it, as must the decisions in *San Pedro* and *Hancock*.

Section 211.015(a) states:

a)      Notwithstanding other requirements of this subchapter, the voters of a home-rule municipality may repeal the municipality's zoning regulations adopted under this subchapter by either:

(1)      a charter election conducted under law; or

(2)      on the *initial* adoption of zoning regulations by a municipality, the use of any referendum process that is authorized under the charter of the municipality for public protest of the adoption of an ordinance. [Emphasis added].

\*   \*   \*

TEX. LOCAL GOV. CODE ANN. §211.015(a) (Vernon 1999). In turn, subsection (e) of the same section provides that:

e) The provisions of this section may only be utilized for the repeal of a municipality's zoning regulations in their *entirety* or for determinations of whether a municipality should initially adopt zoning regulations, except the

7

governing body of a municipality may amend, modify, or repeal a zoning ordinance adopted, approved, or ratified at an election conducted pursuant to this section. [Emphasis added].

*Id.* at §211.015(e).

As can be seen, §211.015(a) authorizes the repeal of zoning regulations adopted by a municipality. Furthermore, the repeal may occur in one of two ways. That is, it may be through a general charter election or by popular referendum (assuming the city charter allows for referendum as a means of protesting the adoption of an ordinance). No one contends that the procedure invoked by Goss and Fehr is a charter election. So, we need not consider that avenue. Instead, the dispute implicates the second means of protesting zoning ordinances. And, to the extent that the means utilized is referendum under §211.015(a)(2), the avenue is available with regard only to the *initial* adoption of the regulations.

Now, the question arises as to what is meant by the "initial adoption" of the "regulations." Goss and Fehr posit that it refers to the time when any particular zoning rule is enacted or amended irrespective of whether zoning regulations previously existed. On the other hand, Canyon argues that the statute allows for popular vote only when the local governing body adopts zoning regulations for the first time, *i.e.* when it adopts a body of regulations when none previously existed. To decide who is correct, we rely on various directives regarding statutory construction.

According to the Supreme Court, our goal is to give effect to the legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). In garnering that intent, we first look to the plain and common meaning of the words incorporated in the statute. *Id.* So too are we to read the particular provision in context;

8

that is, we must read the statute as a whole. *Marcus Cable Associates, L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex. 2002). With that said, we address the statute at hand.

As mentioned above, §211.015(a)(2) contains the phrase "on the initial adoption." Yet, that is not the only time the word "initial" or a derivative thereof is used in the statute. The legislature mentions it in subsection (c) when again speaking of the "initial adoption of zoning regulations." It also alludes to it in subsection (e). The latter tells us when the avenues created by §211.015 may be sojourned and one such time is when the municipality is determining if it should "initially adopt zoning regulations." Given that the plain or common meaning of the word "initial" encompasses the idea of the first or the beginning, it is clear that the legislature intends for §211.015 to be utilized only when the municipality attempts to create and impose, for the first time, upon its citizenry a body of zoning ordinances when or where none previously existed. And, the context of the statute bears out this interpretation. For instance, in subsection (b) of §211.015, we are told that the municipality may opt to submit the zoning regulations for repeal by popular vote, but the ordinances must be submitted in their "entirety." TEX. LOCAL GOV. CODE ANN. §211.015(b) (Vernon 1999). Virtually identical language appears in subsection (e) through which we are told that the avenues created in §211.015 can be used only to repeal the regulations "in their entirety." Plainly, the word "entirety" means "all." Thus, the focus of the legislation is not on the piecemeal repeal of particular zoning ordinances but rather on the repeal of all zoning laws.

So, the procedure developed by the legislature through §211.0015(a) and (e) can be best characterized by allusion to a phrase oft uttered by Deputy Barney Fife. To the extent a dispute about zoning arises, the legislature intended to "nip it . . . nip it in the bud."

9

The proverbial "bud," for purposes of zoning, is represented by the first ordinances enacted by the city. And, to successfully "nip" the dispute surrounding their imposition on the local populace, they had to be proffered for rejection *in toto*; "all or nothing," according to the legislature. And, in so constructing the statute, the legislature effectively did two things. First, it modified *Hancock* and *San Pedro* to the extent they indicated that initiative and referendum could not be used to repeal zoning ordinances. Second, it restricted the use of initiative and referendum to the time and to the regulations described in the statute. Referendum, initiated by the voters, could not be used to vitiate such ordinances piecemeal.[1] Nor could it be used after the first ordinances survived with or without attack.

Fehr and Goss, however, posit otherwise and do so by relying upon §211.002 of the same Local Government Code. According to that provision, the phrase "adoption of a zoning regulation" also includes the "amendment, repeal, or other change of a regulation . . . ." TEX. LOCAL GOV. CODE ANN. §211.002 (Vernon 1999). And, their argument goes, if the adoption of zoning regulations also includes amendments thereto, then logically §211.015(a)(2) must also encompass the amendment to previously existing ordinances. We disagree for the definition contained in §211.002 does not encompass that provided for in §211.015(a)(2). This is so because in §211.015(a)(2) the legislature modified the phrase "adoption of zoning regulations" by placing the word "initial" before it. In other words, by including the word "initial" in front of the phrase "adoption of zoning regulations," it was talking about a particular set of zoning regulations, not about zoning regulations in

---

[1]We say "initiated by the voters" because we do not address whether subsection (b) of §211.015 permits the governing body of a municipality to present, through referendum called at some date after their initial adoption, the question of whether all the zoning laws should be repealed.

10

general as contemplated in §211.002. And, as explained above, the particular set of regulations to which it referred are the ones enacted when none previously existed or the first ones enacted by cities as part of their initial zoning efforts. So, the definition in §211.002 does not encompass the words in §211.015(a)(2); nor can it be used to expand the power of referendum beyond the reach intended by the legislature in §211.015.

Nor do we accept the proposition that the Supreme Court in *Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1998) implicitly overruled *San Pedro* and *Hancock* in a way that now allows the public to vote on whether any zoning ordinance should be repealed. Simply put, *Quick* did not deal with §211.015(a)(2) of the Local Government Code but rather the powers reserved to Austinites under the local city charter. Here, we deal with §211.015(a)(2) and its directive as to when and how zoning regulations can be repealed through referendum. And, since the legislature clearly restricted the power of referendum to situations wherein a municipality is trying to zone for the first time, Canyon's city charter must give way to it, *Glass v. Smith*, 244 S.W.2d at 649, as must *San Pedro*, *Hancock* and *Quick*.

Finally, turning to the facts before us, Goss and Fehr seek a public vote, via initiative and referendum, on whether an amendment to a prior zoning ordinance should be allowed to stand. They are not attempting to nullify Canyon's first attempt at zoning. Nor are they trying to nullify all the zoning regulations which Canyon has enacted. Thus, the relief sought exceeds that permitted by §211.015(a)(2) and (e). The legislature has exercised its prerogative in the area, and we must abide by its directive especially when no one questions the authority of the legislature to act. Consequently, the trial court abused its

11

discretion when it 1) concluded that Goss and Fehr have a probable right of recovery and 2) issued its temporary injunction.

Accordingly, the order of the trial court denying Canyon's plea to the jurisdiction of the trial court is affirmed. The order granting Fehr and Goss a temporary injunction is reversed. We remand the cause to the trial court.


Brian Quinn
Justice