NO. 07-10-0466-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 26, 2011
_____

ROBERT SMITH,

Appellant

v.

CITY OF LUBBOCK AND ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

Appellees
_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-542,012-A; HONORABLE LES HATCH, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

Robert Smith (Smith) appeals from summary judgments entered in favor of the City of Lubbock (the City) and St. Paul Fire and Marine Insurance Company (St. Paul). He sued both entities to recover damages allegedly encompassed by an underinsured/uninsured auto liability policy acquired by the City from St. Paul. We affirm in part and reverse in part.

---

[1]John T. Boyd, Senior Justice, sitting by assignment.

*Summary Judgment Favoring St. Paul*

Because of its ease in disposition, we first address whether St. Paul was entitled to summary judgment. During oral argument, the insurer conceded that the decree involving it necessitates reversal. We accept the concession, reverse that particular decree without comment, and remand that specific aspect of the appeal to the trial court for further proceedings.

*Summary Judgment Favoring the City*

Next, we address the allegation that the State's workers' compensation laws do not bar an employee from suing his employer upon an underinsured/uninsured motorist policy for damages suffered by the employee while working. The damages at issue here arose when Smith was struck by an intoxicated driver while he performed his duties for the City. The intoxicated driver, allegedly, was neither an employee of the City nor sufficiently insured to recompense Smith's injuries. So, he made claim upon an underinsured motorist policy (the policy) acquired by his employer (the City) for its employees, even though he already received workers' compensation benefits. Denial of the claim resulted in suit upon the policy.

According to Smith, the trial court should not have granted summary judgment upon the City's contention that the workers' compensation laws barred additional recovery against the City. Those statutes only precluded recovery for work-related injuries arising from common law torts as opposed to a contract, he continues and, his claim arose from an insurance contract. We overrule the issue.

For purposes of this appeal, the following facts are undisputed. First, the City acquired the policy from St. Paul on behalf of its employees. Second, Smith was an

2

employee of the City at all times pertinent. Third, the injuries he suffered at the hands of the drunk driver arose within the course and scope of his employment. Fourth, the City, or its insurer, paid Smith workers' compensation benefits due to injuries related to the accident. So too do we note the existence of a legislative enactment declaring:

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

TEX. LABOR CODE ANN. §408.001(a) (Vernon 2006). Whether the enactment encompasses Smith's contractual claim founded on the policy depends upon an interpretation of that statute. Again, he asks us to read it as simply referring to tort claims, not those arising from contract. We must disagree.

When interpreting a statute, our goal is to give effect to the legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999); *City of Canyon v. Fehr*, 121 S.W.3d 899, 905 (Tex. App.–Amarillo 2003, no pet.). In garnering that intent, we first look to the plain and common meaning of the words incorporated in the statute. *Id.* So too must we read the particular provision in context; that is, we must read the statute as a whole. *Marcus Cable Associates, L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex. 2002). With that said, we turn to §408.001(a).

As can be seen from its text, the statute does not contain the words "tort" or "negligence." Indeed, it does not mention any particular type of chose-in-action. Given that the common law choses-in-action of tort and contract have existed for more than a century, it is safe to presume that our legislators knew of them when enacting §408.001(a). Yet, they opted not to express them in the provision. Instead, they

3

incorporated terms focusing upon a remedy for particular injuries, not a cause of action through which remedies are generally sought. And, those terms were "workers' compensation benefits" being the "exclusive remedy" for "work-related injuries" encountered by employees "covered by workers' compensation insurance." Moreover, the parameters established by the word "exclusive" are clear and finite. Indeed, the word is one of limitation and is commonly defined as "not admitting of something else," or "limited to the object or objects designated," or "shutting out all others from a part or share," *Exclusive Definition,* DICTIONARY.COM, http://Dictionary, reference. Com/browse/exclusive (last visited Sept. 15, 2011) or as meaning "sole, single." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 436 (11th ed. 2003). And, most importantly, none of those definitions suggest a vague or porous border allowing for the quantum held within to be expanded. If a particular remedy (such as the provision of workers' compensation benefits) is to be "exclusive," the latter term cannot be read as allowing for any others, unless we are to ignore the aforementioned rules of statutory construction.

In addition to those rules of construction, precedent also tends to strike against Smith's position. Admittedly, none issued by a Texas court are directly on point but they nonetheless provide basis for refusing to read the exclusivity provision as encompassing only tort claims. For instance, both we and the Texas Supreme Court have stated that workers' compensation benefits substitute not only for common law rights and remedies but also statutory rights. *Hartford Acc. & Indem. Co. v. Christensen,* 149 Tex. 79, 228 S.W.2d 135, 138-39 (1950); *Prescott v. CSPH, Inc.,* 878 S.W.2d 692, 695 (Tex. App.–Amarillo 1994, writ denied) (stating that a worker waives

his common-law and other statutory rights of action against an employer when the employer is a subscriber to workers' compensation). And, it cannot be doubted that an action for breach of contract is a common law claim. *See Tex. Mutual Ins. Co. v. Goetz Insurors, Inc.,* 308 S.W.3d 485, 488 (Tex. App.–Amarillo 2010, pet. denied) (referring to a common law breach of contract action). So, it would seem that Smith's effort to categorize his claim upon the policy as one for breached contract to trump the exclusivity provision is of little value to him.

Simply put, if an employee suffers work-related injuries and seeks their redress from an employer that subscribes to a workers' compensation program, there is only one way to obtain them. It is through that compensation program. It does not matter if the employer provides those benefits from its own pocket or via a contract with a third party insurer; once it provides them, statute bars the employee from forcing the employer to redress the injuries through other means. "To rule otherwise would provide the employee a backdoor way of recovering more from his employer than the exclusive workers' compensation remedy . . .," especially when a portion of the recovery "would come out of that employer's pocket." *Bercy v. St. Martin*, 37 S.3d 500, 403 (La. Ct. App. 2010, writ denied). And while there may not be authority directly on point from any Texas court, our decision nonetheless comports with those rendered by a number of other jurisdictions. *See id.*; *Berger v. First State Ins. Co.,* 416 Mass. 652, 624 N.E.2d 947, 949 (1993); *Bouley v. City of Norwich,* 610 A.2d 1245, 1251-53 (Conn. 1992) (deciding that the exclusivity provision prevented suit even though underinsured/uninsured motorist insurance was mandated by statute);[2] *Gullet v. Brown,*

---

[2]This decision was superseded by statute in 1993.

307 Ark. 385, 820 S.W.2d 457 (1991); *Mitchell v. Philadelphia Electric Company,* 281 Pa. Super. 452, 422 A.2d 556, 561-62 (1980).

Finally, our decision rests upon the facts, circumstances, and statutory language before us. We do not decide whether the outcome would or should differ if 1) an employer was mandated to buy underinsured/uninsured motorist coverage for its employees, s*ee William v. Newport News*, 240 Va. 425, 397 S.E.2d 813, 816-17 (1990) (noting that the acquisition of under/insured coverage was mandatory and holding that workers' compensation was not the sole remedy available); *Heavens v. Laclede Gas Co.*, 755 S.W.2d 331, 333 (Mo. App. 1988) (wherein statute mandated the purchase of such coverage and the employer was self-insured); 2) the wording of the exclusivity provision focused upon injury related to the "acts or omissions" of third parties rather than a relationship between the injuries and employee's work, s*ee Christy v. Newark*, 102 N.J. 598, 510 A.2d 22, 28-29 (1986) (wherein the statute read that "[i]f an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death *for any act or omission* occurring while such person was in the same employ as the person injured or killed, except for intentional wrong" and concluding that the provision simply encompasses injury arising from one's negligence), or 3) the entire sum due under the policy was payable solely by an insurance company. *See Heavens v. Laclede Gas Co.*, 755 S.W.2d at 332 (stating that "[i]f [the] employer had purchased insurance for the vehicle

6

rather than self-insuring, the insurer would have paid under the uninsured motorist provision of that policy").[3]

As for Smith's attempt to invoke the doctrines of waiver and estoppel, we say the following. Those two theories exist to preserve rights, not to create independent causes of action. *Hruska v. First State Bank,* 747 S.W.2d 783, 785 (Tex. 1988). They are defensive and prevent the loss of existing rights; they do not create liability where it does not otherwise exist. *Id.* Given this, neither waiver nor estoppel can grant Smith any rights or relief in addition to that provided in §408.001(a) of the Labor Code.

We affirm that portion of the summary judgment denying Smith recovery against the City, reverse that denying him recovery against St. Paul, and remand his dispute against St. Paul for further proceedings.

Brian Quinn
Chief Justice

---

[3]Whether payment of the initial $500,000 worth of damages likened to self-insurance or a deductible, St. Paul was obliged to pay only damages exceeding that amount. The City was liable for the first $500,000 of damages.