

### KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 13, 2015

The Honorable Eddie Lucio, Jr.
Chair, Committee on Intergovernmental
    Relations
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0026

Re: Question relating to the Galveston City Charter and a tax increment reinvestment zone governed by chapter 311 of the Tax Code (RQ-0004-KP)

Dear Senator Lucio:

Your predecessor asked several questions relating to the City of Galveston's Charter ("Charter") as it may affect governance of a tax increment reinvestment zone created by the city under chapter 311 of the Tax Code.[1] Specifically, the questions are:

> (1) Does the provision of the Galveston City Charter that regulates eligibility to serve on a board created by the city apply to members of the board of directors of a tax increment reinvestment zone created under Chapter 311, Tax Code?

> (2) If the charter provision does apply, do the residency requirements and term limits provided by the provision apply to board members of a tax increment reinvestment zone?

Request Letter at 1.

Our analysis of these questions is necessarily limited. The first question requires the construction of a provision of a city charter, a task which is outside the purview of an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0449 (2006) at 1 ("In deference to municipal officials' authority to interpret their charters and ordinances, this office does not ordinarily construe city charters or ordinances."). Accordingly, we do not address the applicability of the Charter. The second question is contingent upon an affirmative answer to the first, but as it involves the construction of provisions of the Tax Code, it presents legal questions that we can address. *See* Tex. Att'y Gen. Op. No. GA-0356 (2005) at 2 (considering charter's implication of

---

[1]*See* Letter from Honorable Juan Hinojosa, Chair, Senate Comm. on Intergov'tl Relations, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Jan. 6, 2015), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

state law). Thus, while the City of Galveston must determine the applicability of its Charter, we will presume that it applies for the limited purpose of addressing these legal questions.

With that presumption, we consider the legal issues in the second question. The first issue concerns a charter residency requirement, which prohibits a person from serving as a member of a board "if that person has not been a resident of and domiciled in the city for at least one (1) year immediately preceding the appointment." Request Letter at 1–2. Your predecessor noted that a potential conflict arises when this requirement is considered against subsection 311.009(e) of the Tax Code. *Id.* at 2. Subsection 311.009(e) provides that to be eligible for appointment to a tax increment reinvestment zone board, a person

> must be at least 18 years of age and:
>
> (1)  if the board is covered by Subsection (a):
>
> > (A)  be a resident of the county in which the zone is located or a county adjacent to that county; or
> >
> > (B)  own real property in the zone, whether or not the individual resides in the county in which the zone is located or a county adjacent to that county; or
>
> (2)  if the board is covered by Subsection (b), own real property in the zone or be an employee or agent of a person that owns real property in the zone.[2]

Tex. Tax Code Ann. § 311.009(e) (West 2015) (footnote added). The second issue in the second question involves the potential conflict between the Charter's term limit requirements and subsection 311.009(c), which provides that "[m]embers of the board are appointed for terms of two years unless longer terms are provided under Article XI, section 11, of the Texas Constitution." Tex. Tax Code Ann. § 311.009(c) (West 2015).

The Home-Rule Amendment, article XI, section 5, of the Texas Constitution, bestows upon certain cities the "full power of local self-government." *City of Houston v. State ex rel. City of W. Univ. Place*, 176 S.W.2d 928, 929 (Tex. 1943); *see* Tex. Const. art. XI, § 5. But article XI, section 5 also provides that "no charter or any ordinance passed under said charter shall contain any provision inconsistent" with the constitution or general laws of the state. Tex. Const. art. XI, § 5. Thus, home-rule cities have broad discretionary powers subject only to limitations enacted by the Legislature. *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). "A city is preempted from regulating in a field if the city's regulation is expressly prohibited, if the legislature intended state law to exclusively occupy that field, or if the city regulation conflicts with the state law even if

---

[2]Subsection (a) provides the requirements for the board of a reinvestment zone, "except as provided by Subsection (b)." Tex. Tax Code Ann. § 311.009(a). Subsection (b) applies to zones designated under Section 311.005(4) allowing for a zone to be created by petition. *See id.* § 311.009(b).

state law is not intended to occupy that field." Tex. Att'y Gen. Op. No. GA-0342 (2005) at 2. "A general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990).

A home-rule city's general police powers to promote the health, safety, and general welfare of its people may be legislatively circumscribed. *See* Tex. Att'y Gen. Op. No. JC-0009 (1999) at 4–5 (recognizing that the Legislature may impose limits on the taxation authority of political subdivisions, including home-rule cities, pursuant to its plenary legislative powers). Particularly with respect to chapter 311 of the Tax Code, this office has recognized that "in the case of tax increment financing permitted by article VIII, section 1-g(b), a home-rule city does not exercise full power of local self-government but rather must look to general law implementing section 1-g(b) for the authority to engage in tax increment financing." Tex. Att'y Gen. Op. No. GA-0276 (2004) at 5 (explaining that article VIII, section 1-g(b) of the Texas Constitution—the basis for chapter 311—is, for cities, an exception to the constitutional requirement that taxation be equal and uniform). Mindful of these principles, we consider generally whether charter requirements governing residency and term limits could conflict with state law.

We first consider a city-residency requirement. In authorizing a city to do what is "necessary and convenient" to implement chapter 311, the Legislature has not completely preempted the field of tax increment financing. *See* TEX. TAX CODE ANN. § 311.008(b) (West 2015). Yet, the Legislature has expressly reiterated the prohibition against a city enacting a conflicting provision. *Id.* § 311.018 (West 2015). And the Legislature has enumerated precise eligibility requirements for a board member, particular even to the subsection under which the zone was created. *Id.* § 311.009(e)(1)–(2). Such precision reveals an intent by the Legislature to affirmatively direct the eligibility requirements with respect to a prospective board member's nexus to the zone by residence or property ownership. Mere difference is not necessarily a conflict, but when the difference serves to narrow or restrict a right or privilege authorized by state statute it is likely impermissible. *See, e.g., Talley v. City of Killeen*, 418 S.W.3d 205, 209 (Tex. App.—Austin 2013, pet. denied) (concluding that ordinance imposing 240-hour deadline in which to file a disciplinary appeal "impermissibly narrowed" the ten-day deadline in statute). Thus, a charter provision requiring city residency that would preclude someone who otherwise satisfies the Legislature's nexus requirement from being eligible to serve as a board member would be inconsistent with state law. The conflict between a city residency requirement and subsection 311.009(e) would be irreconcilable: a person who was a city resident could satisfy the eligibility criteria imposed by the statute, but a non-resident landowner eligible to serve under subsection 311.009(e) would be ineligible because of the charter. Accordingly, a charter's inconsistent eligibility requirement that a person must be a resident of the city is likely void when applied to members of the board of directors of a tax increment reinvestment zone created under chapter 311 of the Tax Code.

The same analysis applies to consideration of the second issue regarding a term-limit requirement. Subsection 311.009(c) establishes a term of office for board members of two years but is silent regarding the total number of years or terms for which a board member may serve. *See* TEX. TAX CODE ANN. § 311.009(c). Because subsection 311.009(c) imposes no term limit, it

would allow a zone board member to serve an unlimited number of terms. A charter's limit on terms a person may serve, here after six years, would have the effect of ending a person's statutory eligibility to continue indefinitely serving as a board member. *See generally City of Canyon v. Fehr*, 121 S.W.3d 899, 904 (Tex. App.—Amarillo 2003, no pet.) (recognizing the fact that "charter provisions and ordinances are subject to the general laws of this state also means that this state's general laws may permit what a charter prohibits"). This irreconcilable inconsistency between such a charter term-limit provision and subsection 311.009(c) would likely render the charter provision void to the same extent as the residency requirement.

## SUMMARY

The question whether the City of Galveston's Charter applies to a board of a tax increment reinvestment zone created by the City under chapter 311 of the Tax Code is outside the purview of an attorney general opinion.

As a general matter, however, a charter provision allowing only city residents to serve on a tax increment reinvestment zone board is inconsistent with Tax Code subsection 311.009(e) and is likely void. Similarly, a charter provision limiting the number of terms a tax increment reinvestment zone board member may serve where subsection 311.009(c) would permit the board member to serve an unlimited number of terms likely renders such a charter provision void.

Very truly yours,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee